UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN ALTVATER,

       Plaintiff,

v.

HOSPICE OF HOLLAND,

       Defendant.

Case No.

Hon.

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI  48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

**COMPLAINT AND JURY DEMAND**

Plaintiff Susan Altvater ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, state the following for her Complaint against Hospice of Holland ("Defendant"):

**INTRODUCTION**

1. Susan Altvater was terminated by Defendant after requesting a religious accommodation to be exempt from Defendant's COVID-19 vaccine mandate.  Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite.  Defendant ignored the EEOC's warning that

1

employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Ms. Altvater based on Defendant's subjective standard of religiosity while accepting every other similar request.

## PARTIES AND JURISDICTION

2. Plaintiff Altvater is an individual residing in the City of Dorr, Allegan County, in the State of Michigan.

3. Defendant Hospice of Holland is a for-profit company headquartered in Holland, Michigan.

4. Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Therefore, this Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C § 1391(e), as it is the district where the events precipitating litigation arose. 28 U.S.C § 1391(e).

6. Plaintiff filed a charge of religious discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter on September 20, 2022.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

7. Defendant's vaccine mandate required its employees to become fully vaccinated against COVID-19 by September 15, 2021.

8. Defendant originally indicated that it would announce its decisions on employee accommodation requests on September 21, 2021.

**Plaintiff's Employment and Accommodation Requests**

9. On August 15, 2021, Plaintiff submitted her request for accommodation to Defendant's HR Department, detailing her sincerely held religious beliefs and explaining how those beliefs prevented her from receiving the COVID-19 vaccination in its current form.

10. Plaintiff's letter explained, in pertinent part:

> We may not defile God's temple with processes unnatural to his created order. The COVID-19 experimental genetic-altering vaccine is potentially dangerous physiologically and to me unwise, because it relies on trusting man and not God's sovereign control of His creation and his perfectly designed natural immunity processes. Hospice of Holland is now mandating me, and its other Christian workers, with an ultimatum to take a vaccine or employment will be terminated. This vaccine will alter my bodies genome and force me to break God's first commandment…To clarify, I should not be trusting God's creation (man and his ideas) above God. This Hospice of Holland mandate is therefore pressuring me into a compromising position with my heavenly father.
>
> Aborted fetal tissue was used in the creation of the vaccine and may also be used in the current vaccine production. The Bible tells us that first man is made in God's image, second that life begins in the womb, and finally that we are not to take life.

11. On September 15, 2021, six days before Defendant stated it would inform its employees of its decision, Defendant rejected Plaintiff's request.

12. Plaintiff learned the prior day that Defendant granted the requests for accommodation for every other employee who sought exemption.

13. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

14. Defendant did not engage in any interactive process or bilateral cooperation.

15. Instead, the Director of Human Resources, Scot Reynolds, only stated the following in his denial email: "[a]fter review and consideration, your request for a religious waiver is denied.

3

At this point, the expectation is that you either get the vaccine and provide proof of the vaccine, or end your employment."

16. Plaintiff requested further explanation as to why her request for accommodation was denied, while every other request was granted.

17. On September 15, 2021, Mr. Reynolds responded to Plaintiff's request, stating, in pertinent part:

> The decision was based on the fact that your reason for not getting the vaccine is based on non-religious grounds. In your email of September 10, you stated: 'I will not refuse the vaccine, but will defer taking it until the clinical trials are over in the future (possibly 2 years) and the safety data is analyzed and available so I can exercise true informed consent.'

18. Plaintiff's September 10, 2021 email was taken out of context when it used the email to form its "basis" to deny her request.

19. Plaintiff's email was intended to inform Defendant that she was open to reconsidering her refusal to vaccinate against COVID-19 once more information became available.

20. Plaintiff did not intend to tell Defendant that she would unequivocally abandon her sincerely held religious beliefs and take the COVID-19 no matter what.

21. Plaintiff explained as much in a September 16, 2021, email to Mr. Reynolds:

> [The September 10, 2021, email] does not conflict with my religious statement, but in clarifying my intent, leaves me open to the option, should a vaccine be proven in the future not to have MRNA genetic altering material and not be produced with fetal tissue, I may consider its use.

22. Defendant decided to continue to rely on its incorrect interpretation of Plaintiff's September 10, 2021, email, and, in an email dated September 17, 2021, Mr. Reynolds stated:

> I don't think there was a misunderstanding. Your previous email was unambiguous and the decision we made stands. At this point, I will proceed under the assumption that you will not be getting the

4

vaccine/choosing to get the vaccine…and that your last day will be October 8.

23. Plaintiff requested that Defendant provide a termination letter thoroughly explaining the exact reasons for her termination.

24. Since Plaintiff was being forced to enter the job market, a termination letter would be useful to help her explain to potential employers that she had not been fired for disciplinary reasons.

25. Defendant refused to provide a termination letter.

26. On October 1, 2021, Mr. Reynolds conveyed to Plaintiff, "[n]o letter will be forthcoming…If you chose to get the vaccine, your employment wouldn't be ending."

27. Plaintiff was an exemplary employee for four years and a frontline worker for one and a half years.

28. Plaintiff could have tested daily to confirm that she was not ill.

29. Plaintiff could have engaged in frequent sanitizing and disinfecting.

30. Plaintiff could have worn gloves and a face covering in the workplace.

31. Before vaccines were developed, the accommodations sought by Plaintiff were deemed sufficiently effective to protect employees in the workplace.

32. Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework.  U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

33. "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

34. Plaintiff had worked on Defendant's premises throughout the pandemic without causing any harm to herself or her coworkers.

35. Defendant terminated Plaintiff based on her alleged lack of a sincerely held religious belief, and not because reasonable accommodation would pose an undue hardship.

36. Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

37. The sincerity of Plaintiff's religious beliefs is not open to question. *See Equal emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question).

38. An individual's testimony about his or her belief "must be given great weight" and is enough to show she has a bona fide religious belief. *See e.g., Seeger*, 380 U.S. at 184 (1965) (When dealing "with the beliefs of different individuals who will articulate them in a multitude of ways… the claim of the [party] that his [or her] belief is an essential part of a religious faith must be given great weight).

39. Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible." *E.E.O.C. v. Alliant Techsystems, Inc.*, No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (quoting *Hobbie v. Unemployment Comm'n of Fla.*, 480 U.S. 136, 144 n. 9 (1987)).

40. There is no evidence that would suggest Plaintiff lacked sincerely held religious beliefs.

41. Defendant had no reason to doubt Plaintiff's credibility.

42. Plaintiff's religious conviction and the sincerity of her beliefs is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

43. The prohibition against religious discrimination imposes an affirmative "duty" on employers to accommodate the religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

44. The employer, rather than the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

45. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

46. "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships." *Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir.1988).

47. Defendant is not claiming undue hardship.

### COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious discrimination – Failure to accommodate

48. Plaintiff restates the foregoing paragraphs as set forth fully herein.

49. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

50. Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

51. Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

52. This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

53. After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

54. The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp*., 671 F.2d 141, 146 (5th Cir. 1982)

55. Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

56. Plaintiff holds sincere *bona fide* religious beliefs that precludes her from receiving a COVID-19 vaccine.

57. Plaintiff informed Defendant of those beliefs and requested religious accommodations from the vaccine mandate.

58. Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation request.

59. Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

60. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

61. A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

62. Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

63. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

64. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

65. Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodation for her religious beliefs.

66. As a result, Plaintiff was not informed (a) what about this accommodation request posed an undue hardship; and (b) why she could not be accommodated.

67. Defendant thereby discriminated against Plaintiff because of her religious beliefs.

68. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

69. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

70. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

71. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious discrimination –retaliation

72. Plaintiff restates the foregoing paragraphs as set forth fully herein.

73. Plaintiff engaged in protected activity when she submitted a written request for a religious accommodation to the vaccine mandate.

74. The Sixth Circuit has recognized a claim for discrimination under Title VII based on one's "advocacy on behalf of protected class members." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009).

75. In *Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000), where the plaintiff alleged that he was fired due to his "advocacy on behalf of minorities," the Sixth Circuit opined, "the fact that [p]laintiff has not alleged discrimination because of his race is of no moment inasmuch as it was a racial situation in which [p]laintiff became involved."

76. Defendant retaliated against Plaintiff by terminating her.

77. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and she will so suffer in the future.

78. Plaintiff has been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work because of the retaliatory conduct, and she will so suffer in the future.

79. Plaintiff has been required to employ the services of an attorney.

80. Defendant's actions were intentional and/or reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

  d.  Attorneys' fees and costs; and

  e.  Such other relief as in law or equity may pertain.

                Respectfully submitted,

                HURWITZ LAW PLLC
                /s/ *Noah S. Hurwitz*
                Noah S. Hurwitz (P74063)
                340 Beakes St., Suite 125
                Ann Arbor, MI 48104
                *Attorneys for Plaintiff*
                (844) 487-9489
Dated: December 16, 2022       noah@hurwitzlaw.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SUSAN ALTVATER,

       Plaintiff,　　　　　　　　　　　Case No.

v.

　　　　　　　　　　　　　　　　　　　Hon.

HOSPICE OF HOLLAND,

       Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI  48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

**DEMAND FOR TRIAL BY JURY**

     Plaintiff Susan Altvater, by and through her attorneys, HURWITZ LAW PLLC, hereby demand a trial by jury in the above-captioned matter for all issues triable.

                                /s/ *Noah S. Hurwitz*
                                Noah S. Hurwitz (P74063)
                                *Attorneys for Plaintiff*
                                (844) 487-9489
Dated: December 16, 2022         noah@hurwitzlaw.com